## Case No. 8,022.

### LAMB et al. v. STARR et al.

[Deady, 447.] [1]

Circuit Court, D. Oregon. Sept. 9, 1868.

OREGON DONATION ACT—ESTATE OF WIFE—DEATH BEFORE TITLE COMPLETE—CONVEYANCE OF POSSESSORY RIGHTS.

1. The estate granted to a married person by section 4 of the donation act (9 Stat. 497) is a qualified or determinable fee, with a contingent remainder to the survivor and children of such person; and in case he or she dies intestate, before patent issues, such remainder becomes vested in such survivor and children, who take as donees of the United States, and not as the heirs of the deceased.

[Cited in Cutting v. Cutting, 6 Fed. 263; Mizner v. Vaughn, Case No. 9,678; Wythe v. Haskell, Id. 18,118.]

2. A patent for lands issued to a deceased person, enures to the benefit of the successor in interest of such person. 5 Stat. 31.

[Cited in Semple v. Bank of British Columbia, Case No. 12,660.]

3. Effect of partition between the children of Nancy Lownsdale and the heirs and vendees of her husband.

4. Where one owning an undivided fifth of a certain block of land executes a quitclaim deed of his interest therein, containing at the close this clause: "and by these presents give them (the grantee and his heirs) peaceable possession of the

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

same. to have and to hold, for their own use and benefit forever:" *Held*, not to be a covenant for quiet enjoyment of any part of the premises. nor a recital or representation which would estop the grantor from asserting an after acquired interest in the same block.

[This was a suit in equity for partition of certain real estate in the city of Portland, Or., brought by John R. Lamb and Emma, his wife, and Ida Squires, heirs of Nancy Lownsdale and D. H. Lownsdale, against Lewis M. Starr and the heirs other than plaintiff of D. H. Lownsdale, to wit, J. P. O. Lownsdale, Millard O. Lownsdale (by guardian), Ruth A. Lownsdale (by guardian), Mary E. Cooper, Hiram Smith, and Hannah Smith. A demurrer and three pleas to the bill were overruled. Case No. 8,021. The case is now heard upon bill, answer, and proofs taken.]

W. W. Page and W. Lair Hill, for complainants.

W. W. Chapman, for defendant Starr.

DEADY, District Judge. This suit was brought by the complainants, on December 26, 1867, to procure a partition of block 218 in the city of Portland, and to declare void a purchase thereof. by the defendant, Starr, on the ground that said Starr took the conveyance of such block to himself, with notice and in violation of certain trusts, upon which the same was conveyed to Starr's grantors by the ancestor of the complainants—Daniel H. Lownsdale. Neither of the defendants—James O. P. Lownsdale, Millard O. Lownsdale, Ruth A. Lownsdale, Mary E. Cooper, Hiram and Hannah Smith—have appeared, and as to them the complaint is taken for confessed. On January 27, 1868, this court, after argument, overruled the demurrer of Starr to the part of complaint alleging a trust, and also disallowed as insufficient three pleas, pleaded by him in bar of the suit. On July 20, 1868, the case was argued and submitted on the complaint, answer of Starr, replication thereto, and proofs. The answer of Starr, repeats the matter contained in the first and second of his pleas. The opinion of this court upon the questions raised by these pleas has been given, and it is not necessary to reconsider them now.

From the pleadings, proofs and admissions of the parties, the facts material to the decision of this case, appear to be:

I. That on September 22, 1848, Daniel H. Lownsdale, being a widower and unmarried, settled on a tract of public land embracing the block in controversy, and containing about 180 acres; and that said Daniel H., on July 10, 1850, intermarried with Nancy Gillihan, the widow of William Gillihan, and that on April 10, 1854, said Nancy died intestate, leaving her children, Isabella Ellen and William Gillihan, and Millard O. and Ruth A. Lownsdale.

II. That said Daniel H. continued to reside upon the tract of land aforesaid from the date of the settlement aforesaid for more than four years thereafter, and that in pursuance of

such settlement and residence and the donation act of September 27, 1850 (9 Stat. 497), the proper officers of the United States land office set apart the east half of said tract to said Daniel H., and the west half thereof, embracing the block in controversy, to said Nancy; and that on October 17, 1860, a patent certificate was duly issued by the office aforesaid for the tract aforesaid, to the said Daniel H. for the east half aforesaid, and to the said Nancy for the west half aforesaid; and that in pursuance of the premises as above stated, on June 6, 1865, a patent was duly issued to said Daniel H. and Nancy for their respective portions of said tract as aforesaid.

III. That on May 4, 1862, Daniel H. died intestate, leaving as his heirs-at-law, the complainants, Emma Lamb and Ida Squires, the children of his daughter Sarah, before that time deceased and his four surviving children, defendants herein, namely—James P. O., Millard O. and Ruth A. Lownsdale and Mary E. Cooper; and that the complainants herein, at the commencement of this suit, were and now are citizens of the state of Kentucky, and that the said complainants, John R. and Emma Lamb, are husband and wife; and that the defendant, Starr, is a resident and citizen of the state of Oregon.

IV. That on April 1, 1858, the said Daniel H., for the nominal consideration of $3,800, by deed. "bargained and sold, released and quitclaimed unto Lansing Stout, his heirs and assigns, all his right, title, interest, claim and demand, both at law and in equity," to five blocks containing eight lots each, in the city of Portland, one of which was block 218 aforesaid; and said deed, after describing the premises, concludes in these words—"together with all and singular the appurtenances thereto belonging, and by these presents give them peaceable possession of the same to have and to hold to their own use and benefit forever. In testimony whereof." etc.; and that on the day and year last aforesaid, said Stout, for the nominal consideration of $1,000, conveyed, by deed, in all respects similar to the one from Daniel H. to him, "all his right, title and interest, both at law and equity" to the undivided one half of four of the blocks described in the deed aforesaid. from Daniel H. to Stout, including block 218 aforesaid, to Alonzo Leland; and that on December 5, 1864, the said Alonzo Leland and Rachel B., his wife, conveyed all their interest in said block 218 to the defendant, Starr; and that on February 14, 1863, the sheriff of Multnomah county, Oregon, upon an execution issued out of the circuit court for such county, against the property of said Stout, sold the undivided one half of said block 218 to said Starr, for the sum of $775, and on December 24, 1863, said sheriff, as sheriff, by deed, duly conveyed to said Starr the undivided half aforesaid, as fully, as by law he was authorized to do.

V. That in January, 1860, Daniel H. purchased the interest of the said Isabella Ellen, then intermarried with one William Potter, in

the estate of her mother, Nancy Lownsdale, and took a conveyance of the same to him, the said Daniel H., duly executed by the said William Potter and Isabella Ellen, his wife.

VI. That in 1864, the said William Gillihan, Jr., by his guardian, commenced a suit in the circuit court for the county and state aforesaid, for a portion of the west half of the tract aforesaid, set apart to his mother, Nancy Lownsdale, as aforesaid, claiming in such suit to be entitled to an undivided fifth thereof; in which suit, the parties to this suit and divers others, the vendees of Daniel H. were defendants; and the said court, on May 22, 1865, among other things, decreed, that Daniel H., in his lifetime, was entitled to one undivided fifth of said west half, as the heir of Nancy, and also to another undivided fifth, as the vendee of said William Potter and Isabella Ellen, his wife, and that said William Gillihan, Jr., and Millard O., and Ruth A. Lownsdale were each entitled as the heirs of Nancy, to one undivided fifth of said west half; and afterwards on August 12, 1865, said court, in said suit, by its decree set apart to said William, Millard O. and Ruth A., in severalty, certain specified portions of said west half, and to the heirs and vendees or claimants under Daniel H., according to their respective interests the remaining portion of said west half, including block 218; and because such partition was unequal, it was further provided by said decree, that said William, Millard O. and Ruth A., should have compensation from their co-tenants in the aggregate, to the sum of $39,156.02, and that said sum should be a lien upon that portion of the west half set apart, as aforesaid, to the heirs, etc., of Daniel H., of which sum, $1,533.45 was by such decree apportioned to and made a lien upon block 218; and it was further declared by said last mentioned decree that nothing therein should prejudice the lawful claims of any of the defendants therein, being heirs or claimants under Daniel H., as between themselves; and that if any such heir or claimant, being then in possession of any parcel of the partitioned premises, should pay the owelty charged thereon, and be afterwards evicted therefrom or from any portion thereof, by any other of such defendants, he should have a lien upon such parcel or portion thereof for the reimbursement of such owelty with interest.

VII. That the conveyance by Daniel H. to Stout, of his interest in block 218 as aforesaid, was made upon a secret trust in writing, that the said Stout would reduce the same to possession, and dispose of it, and apply the proceeds to the payment of the debts of Daniel H.; and that the said Starr at the time he took the conveyances from the sheriff of Multnomah county, and also from Alonzo Leland and wife, as aforesaid, had no notice of said trust; and that Starr paid the owelty assessed upon said block 218, by the decree of the circuit court aforesaid, and that he was, at the commencement of the suit, and still is in possession of

the same, but not adversely to these complaints.

VIII. That the property in controversy herein exceeds in value the sum of five hundred dollars.

IX. That the said Daniel H. at the time of making the deed to Stout as aforesaid, did not represent or profess to said Stout that he was the owner in fee of said block 218, nor that he could and would receive a patent therefor; and that at the time of making said deed and prior thereto, the said Stout was the regular attorney of the said Daniel H.; and that said deed to Stout was made upon no other consideration, than the trust declared in the contemporaneous writing as aforesaid.

From this statement of the facts in the case, it appears that from the date of the settlement of Daniel H. upon the tract of land described in the patent certificate, that the United States, by section 4 of the donation act, granted said tract to Daniel H. and Nancy, his wife, in equal parts, to be divided between them by the officers of the proper land office. Nancy having died intestate prior to the issuing of the patent, her share or interest in the donation—which is the west half—was by the same statute granted over to her husband and children in equal proportions. They did not take as the heirs of the deceased under the local law of descent, but directly as donees of the United States. The estate granted to Nancy in the west half, was a qualified or determinable fee, for although it might have continued forever and descended to her heirs ad infinitum, yet by the terms of the grant it was liable to be determined—terminated—by the happening of this event, the death of Nancy before patent and without will. In contemplation of this contingency, the statute granted Nancy's share of the donation in equal parts to her husband and children. Until the happening of this event, so long as it was possible to happen, the husband and children, had a contingent remainder in the land. After it did happen, the estate became absolute in them. They took this interest as donees of the United States, and not as heirs of Nancy. As it was, Nancy's estate in the land terminated with her death, and she left nothing in it to descend to, or be inherited by any one. The husband and children are in by purchase and not by descent. Fields v. Squires [Case No. 4,776].

It appears that the certificate and patent in this case have been issued under a misapprehension of the facts. They are issued to Nancy for the west half, while in fact she was dead years before. In the meantime the act had vested the land designated in the record, in her husband and children. In such case the patent to the deceased wife may be held to be within the spirit of the act of May 20, 1836 (5 Stat. 31); § 1 reads: "In all cases where patents for public lands

have been or may hereafter be issued, in pursuance of any law of the United States, to a person who had died, or shall hereafter die before the date of such patent, the title to the land designated therein, shall enure to and become vested in the heirs, devisees or assignees of such deceased patentee, as if the patent had issued to the deceased person during life."

In this case, the land designated in this patent could not vest as it would have done if issued to Nancy during her life, because the donation act otherwise provided. The person to whom the patent was issued is dead, and the persons to whom the act gave the land in that event, although neither "the heirs, devisees or assignees" of Nancy, are her successors in interest, and the persons to whom the patent should have issued. Unless this patent to Nancy can be considered as enuring to them under the act of 1836, it must be deemed void. Schedda v. Sawyer [Case No. 12,443]. For this is not a case of title by patent, but of grant by a statute, and in which the patent is only official evidence of a compliance with the subsequent conditions annexed to the grant. This point has not been argued by counsel, and as between the parties to this suit, there seems to be no question made about it. They all claim under the statute grant to the husband and children on the death of Nancy.

Having thus ascertained the persons to whom block 218 as a part of the west half was granted by the United States, it remains to determine the present ownership of it. Daniel H. having acquired one fifth of the west half under the donation act, and purchased another fifth of Isabella Ellen Porter, he became the owner of two fifths of such tract. The other three fifths were owned by William Gillihan, Jr., and Millard O. and Ruth A. Lownsdale, the children of Nancy. The two fifths interest of Daniel H., so far as not disposed of by him in his lifetime, upon his death descended to his four living children and the representatives of his deceased daughter, Sarah—the present complainants. By the decree in the partition suit, certain parcels of the tract were allotted in severalty to the three children of Nancy, and the remaining portion of the tract was allotted to the heirs and grantees of Daniel H., according to their respective interests. The partition was made between these two classes, the children of Nancy and the heirs and grantees of Daniel H. As between the individuals of the latter class no partition was made, nor was there any conclusive determination as to who were such heirs or vendees. By far the larger part of the tract was allotted to the heirs of Daniel H., and for that reason a certain sum of money was charged upon it in favor of the children of Nancy, to make the partition equal in value. By the partition, the children of Nancy were divested of their three fifths interest in the part allotted to the heirs of Daniel H., and the latter were divested of their two fifths interest in the part allotted to the children of Nancy. On the whole, the heirs of Daniel H. gained in quantity by the partition, but were required to pay the difference in value in money. But the grantees of Daniel were not so affected. They yielded nothing in the partition and received nothing. Fields v. Squires [supra]. Among others, block 218 was allotted to the heirs and vendees of Dan'l H., according to their respective interests. Lansing Stout was the only person who appears to have received a conveyance from Daniel H. of any interest in the block. Whatever that interest was, it has been since acquired by the defendant Starr. The sale to Stout was of all Daniel H.'s interest at that time. Daniel H.'s interest at that time was only a fifth. His other fifth he purchased some years afterwards. Starr is then the owner of one fifth of the block, and the heirs of Daniel H. of the other four fifths in equal parts. The heirs of Daniel H., within the narrow limits of block 218 gain in quantity, but in consideration they are made to yield their interest elsewhere throughout the tract, and pay the children of Nancy a certain owelty. But Starr had no interest in the tract outside of this block. As has been already said, he neither lost or gained by the partition, nor did he yield up an interest in one block to receive an equivalent for it in another. He got what he had purchased, and no more or less—the interest of Daniel H. in block 218, on April 1, 1858, and that was an undivided fifth and no more.

But the principal argument for the defendant is made upon the concluding words of the deed from Daniel H. to Stout. Counsel contend that these amount to a covenant for quiet enjoyment as to the whole block, and that therefore Daniel H. and all persons claiming under him are estopped to claim any interest in the block, whether they are otherwise entitled to it or not. The deed, as has been stated, was a simple quitclaim of the interest of Daniel H. in the block, and there is no single expression in the deed that has any other different signification. The words which are said to constitute a covenant for quiet enjoyment, are these: "and by these presents give them (Stout and his heirs) peaceable possession of the same to have and to hold for their own use and benefit forever." Stress has been laid upon the proximity of the clause professing to give possession and the habendum. But the habendum clause does not add to or diminish the effect of the other. "To have and to hold" what? Block 218? Not at all, but only the interest of Daniel H. in that block, on April 1, 1858, the date of the deed, and nothing more. But, adds counsel, the words are "to have and to hold to their own use and benefit forever." Yes, whatever is quitclaimed is forever, and not

for a day or for life. But what is it Stout was to have and to hold forever? Not block 218, but only the interest of Daniel H. therein, be that less or more.

As to the clause professing to give possession, in deference to the earnestness and argument of counsel, I have examined it and re-examined it to see if it could possibly be construed into a covenant for quiet enjoyment of the whole premises, or even any part of them; but I can find no countenance for such a construction on either reason or authority. This clause contains neither a recital nor a promise, but simply a statement as to a present fact, which might or might not have been true. Daniel H., by this clause says—"by these presents I give the grantee herein peaceable possession of the same." What does "the same" refer to? Surely the interest conveyed, which was the then interest of Daniel H. in the block—an undivided one fifth, and no more. As one tenant in common is entitled to the possession of the whole premises, Daniel H., upon the sale of his undivided fifth to Stout, might have put him in possession of the whole block, but not to the exclusion of his co-tenants. Yet if he had, he would not thereby covenant that Stout should have quiet enjoyment of the premises thereafter, or of any part of them. Nor would an express covenant that Stout should quietly enjoy the interest then quitclaimed, estop the heirs of Daniel H. from claiming the other four fifths of the block. But this clause does not amount to an assertion or admission that Daniel H. did in fact put Stout in possession at all. The words are—"by these presents"—that is the deed—"give them peaceable possession." Then there was no actual possession given, but only such possession as resulted from the execution and delivery of the deed. This was no possession at all, but only that right to the possession which is the incident of legal ownership. If the clause was not in the deed, in this respect its legal effect would be the same. The parties did not go upon the land and pass the possession in the presence of witnesses, and endorse a memorandum thereof on the deed, nor did the grantor deliver the grantee a key or clod from the premises, as a symbol of possession.

It must be admitted this possession clause is an unusual one, and that it does not appear necessary to make good or realize any apparent purpose or intention of the grantor, and for this reason, among others, it has been urged by counsel for Starr, that it must have been intended to secure to Stout or his grantees any future interest which Daniel H. might acquire in the block. But the object of inserting this clause is, I think, quite apparent, when you read the declaration of trust executed by Stout at the time he received this deed. In this paper the deed is described as a mere "quitclaim," and Stout reserves the option either

to sell the property, including this block, or reduce it to possession on the best terms in his power. Then, as a matter of fact, Daniel H. did not put Stout into possession. This clause was probably inserted in the deed upon the idea that it would assist the grantee therein, in a contemplated controversy with the school district, which at that time claimed the property as a donation from Daniel H.

Upon the legal aspect of the case this is sufficient. Four fifths of the block belong to the heirs of Daniel H. in equal parts, and the other fifth to Starr, and upon this basis there must a partition between them, with provision to secure to Starr the repayment of the owelty, with interest. Nor do I think that any one concerned, unless it be the heirs of Daniel H., has any right to complain of the result. The fifth which Starr, as an innocent purchaser, without notice of the trust, obtains, neither Daniel H. or his heirs received any consideration for. But, as it was the fault or neglect of Daniel H. that the declaration of trust was not put upon record, he or his heirs must bear the loss rather than an innocent purchaser. On the other hand, this block being situated to the west of Park street, there could have been no doubt, at the date of the deed from Daniel H. to Stout that the property was within the wife's half, and that Daniel H. had no other than a one fifth interest in it.

Decree accordingly.

[NOTE. For another suit subsequently decided, brought by same plaintiffs, as heirs of Nancy Lownsdale, against T. J. Carter, Isaac B. Smith, and the heirs other than plaintiffs of D. H. Lownsdale, see Case No. 8,013. For suits brought as heirs of D. H. Lownsdale against the remaining heirs and certain other parties claiming different interests in the Lownsdale plat, see Cases Nos. 8,012, 8,017, 8,024, 8,015, 8,023.]